Good morning, Your Honor. May it please the Court, Your Honors. I'm here for Lily May Vega. This is a case about a piece of property in Galesburg on Willow Lane. What happened in this case is Ms. Vega had a deed from the owners of the property which somehow didn't get recorded. It was probably because nobody recorded it. That's probably why, Your Honor. I apologize for the passive voice. And then those owners deeded the property to somebody else and then there's a change of title from those other people to the Andersons represented by Mr. Robertson here. But the issue comes up because Ms. Vega got wind of the sales of the Andersons before it happened and she, according to the affidavit she put into the record in the trial court, she started making demands on people to stop that closing. And I don't know what she told them because the record doesn't say. I would assume she said, wait, I own the property. I've got the deed. Here it is. That's certainly what I would say if I were in her position. So what the record shows us is that she says she started making demands to stop that closing before it happened and that defendant's real estate agent and brokers were aware that she owned title to the property. Now the court apparently struck those assertions from her affidavit for being either vague or incompetent. I can't quite tell from the record what the court's basis was for striking that. My feeling on that is, first of all, they're not incompetent. Ms. Vega certainly had the competence and the personal knowledge to understand if she started making demands on other people to stop something from happening. Don't you think the affidavit ought to say what demands you made to exactly whom you made them and when you did it? I think that would certainly be a better practice. I think absolutely that would be more evidentiary facts. But what I think should have happened, Your Honor, is having made this affidavit that was, we'll say, conclusory, the trial judge should have told her, you can't just give me conclusions, you've got to give me facts. Well, the trial judge's job isn't to be a law professor. No, I know that, Your Honor, but I think when you're dealing with a... and I couldn't find any case support for that, so I didn't argue it in the brief, Your Honor, but I think when you're dealing with a pro se litigant who is, frankly, in way over her head and she's told you things that would give her a case going forward if they're true, if there's actual evidentiary facts to back them up and those evidentiary facts are true, I think as a trial judge you kind of owe it to the litigant, you owe it to the judicial system to say, look, you've got to do better than this. That's what you tell somebody. Well... That's what you tell somebody. Don't give them legal advice, don't give them free hints. You tell them, you're in way over your head, I'll give you more time if you want to hire an attorney. And that's why you can't find the case law that you want. Well, that may be... I do think that there should have been a little more leeway given. I think when you look at the assertions that are made, the factual assertions that are made, and you start thinking about what inferences you can draw from those factual assertions, I think you draw the inference that she made demands of somebody. Certainly saying made demands, certainly you draw the inference that she made demands of somebody. She doesn't give the exact date. She says before the closing, though. That certainly gives a time parameter to it, Your Honors. And who is she likely to make demands of? She can make demands of the postman, she can make demands of the guy at the grocery checkout, but it doesn't seem to make any sense. It seems to me if you're making demands of somebody and trying to stop something from happening and trying to stop somebody from taking real property that you claim you own, you make demands of somebody who's connected to that transaction. And I think those are all reasonable inferences to draw from what she said. Did she own it? I'm sorry, what's the question? Did she own it? Well, she has a deed. I mean, I don't know what... Other than execution and delivery of a deed, I don't know what else you need for ownership. So I would say as between her and the people who signed the deed, yes, she did. Well, it also would have been reasonable before that closing to run down, even if she found out this prior sale was going on, and at that point run down and record the deed. That could have been reasonable. If she hired a lawyer, she probably would have been told to do that. But for whatever reason, she didn't do that. And I don't know why she didn't do that. I certainly wasn't her lawyer at the time. I would have advised her to do that. But the fact that she didn't take one course of action that would have been reasonable doesn't change the legal effect of another course of action that, you know, if her evidence is to be believed, and frankly at a summary judgment stage her evidence has to be believed, would have put and did put the Andersons on notice through constructive notice to their agents that she had a claim to title of the property. So the fact that she didn't do one thing doesn't mean the other thing isn't effective. In response to summary judgment, you've got to come forth with evidence and not conclusions, right? That's true. That's true. That's true. We've already beat that horse. I think we have. And that's really, you know, candidly, that's all there is to the case, is whether these assertions count as enough evidence to defeat summary judgment or whether she should have been, you know, told this isn't going to do it. You've got to be more specific. So that's all I've got. Unless there are any further questions, Your Honors. Did she ever sue the people who sold it to her? I don't believe she did, Your Honor. I don't have any information on that. I kind of believe if she had sued, that would be part of the record. So my guess is she didn't, but I don't know that for sure. Any other questions? All right.  Thank you. Mr. Robertson, good morning. Good morning. May it please the Court. Counsel, I always end up in something of a quandary at this point for the appellee because I have what I was going to say, and then I want to respond to what Mr. Green said. At the outset, when I first became involved in this case, there was a very sketchy complaint with virtually no factual allegations of any kind. I filed a 2619 motion with affidavits and then in return received two, a number of pleadings, but two affidavits, one of which is in the record as 85 paragraphs in length. The Ms. Vega and the trial court blamed everyone for not getting title to her land. There's a companion case that was argued at the same time against Judge Shiplett, who this was originally, this is two houses on one plot of land, and in there, there is an affidavit, I believe, from the attorney in Peoria who handled the sale or the aborted sale to Ms. Vega, who said that the deed was never delivered. For the purpose of our case, we assume, for the sake of argument, that the deed was delivered because she has a photocopy of it, and she had waxed eloquent at the hearing about why she wasn't able to record her photocopy. But the fact is, the first thing that I learned in law school, in real property, was that if you don't record your deed, you have no rights against a subsequent good-faith purchaser. The first thing I learned when I got this case was that the Andersons are good-faith purchasers. When all of these shenanigans were allegedly going on with the property that Ms. Vega complains of, Mr. Anderson was in the Marine Corps stationed on the West Coast. The Andersons didn't have anything to do with those issues. Well, does that mean, I think, is it that where your opposing counsel is coming from, his argument is that her affidavit raises enough to suggest that the Andersons were not good-faith purchasers, that they had knowledge of the prior. Well, let's get to what the evidence is on that thing. She says, the Andersons filed an affidavit that they went to an open house and bought the house to a broker. Traditionally, that's the seller's broker. There's nothing that they hired a broker. The second thing is, if you look at her affidavit, she says that she complained to the Andersons' broker. But if you go to the record, her notice to quit, that she served in the Andersons after they'd been in the house for about a year, is addressed to unknown occupants. If she didn't know who the Andersons were, she certainly didn't know who their agents or brokers were, if they had any, which they didn't. So, the appellant's argument, basically, the argument in the trial court was that, all these terrible things have happened to me, get out of my house. This whole argument about, I gave notice to your broker, your agent, wasn't made in the trial court. You can look through the argument. Well, it's not there. As a somewhat seasoned practitioner, I have great faith in Supreme Court Rule 191. And the purpose of Rule 191 is to make sure that someone doesn't come into court and accuse people of things about which they have no evidence. This case was filed without any evidence. At the end of the day, those two statements out of the 85-page affidavit, we moved to strike them based on vagueness and hearsay. You have to have a foundation. All the cases under 191 say that. The rule says that if Ms. Dagoe were called as a witness, she has the foundation in her affidavit to make those two statements. She doesn't say who she gave the notice to. She doesn't say when she did it. She doesn't say anything other than your broker had notice. If Ms. Dagoe gave the notice, she knows who she gave it to. It's not as if we're going to somehow get into discovery and then she can discover who she said it to. She knows who she said it to if she said it to anyone. The other thing is, I believe the record will establish, she wasn't even in the area when all that was going on. But that's way down the road. Because from the outset, I've tried to make this a very simple motion. Good faith purchaser, deed isn't recorded. She did record it after the sale to the Andersons in Peoria County. I don't think that satisfies the statute. So, in the trial court, there's really nothing presented by Ms. Dagoe other than the fact, I'm sorry, a lot of whining and crying and complaining about how unfair life is and how she's poor and she's in poor health and all these people did it to her. She complained about the court system. She complained about the clerks at the recorder of deeds office. She complained about virtually everyone. You go through the oral arguments, the only realtors complained of in an oral argument that she brought up were years earlier. I think 2004, 2007, I forget how far back. But nothing to do with the Andersons taking title. So then we get into the brief on appeal. With respect to Mr. Green, I think that when you look at taking an appeal from the trial court, you have an obligation to check your facts, check the law, and see if there's a good faith basis for the appeal. And then you have to look at the record in the trial court that you're dealing with. With respect, I think Mr. Green misstates the facts because there is absolutely no competent evidence in any of those affidavits, whether stricken or unstricken. I mean, the affidavit could still stand there and there's nothing in it. It's admissible that the Andersons had a broker, who the broker was, when the broker knew, or how the broker knew. In the trial court, as I mentioned, she goes on and on. These were two paragraphs which were stricken from an 85-paragraph affidavit. I didn't move to strike the portions of the affidavit that I felt she could testify to directly. So there are maybe 20 paragraphs in there that weren't stricken. But these were stricken. In his brief, I think he also misstates the law. He cites the Madden v. Passion case, 395 Illinois Appellate III, 362, for the proposition that these statements in these two paragraphs are somehow saved by the larger context of everything else. Well, there is no larger context to everything else. If you go to the Passion case, there's a specific quote that's in our brief that in Passion, there were paragraphs that were stricken from an affidavit and were affirmed on appeal. And it's the language in Passion, I think, is directly on point. In Passion, an employee gave an affidavit about what the pay of other employees was to support his claim. And that was held to be properly stricken because, and I quote the court, he gives no explanation of how he would know about his co-workers' pay. Nor is the knowledge of an employee pay structure something implied in the job of a construction manager. Close quote. Well, there is nothing in Ms. Vega's affidavits that would make her knowledgeable about the Andersons' legal affairs that would make her in any way aware. And in fact, her own documentation shows she didn't know anything about the Andersons in 2013 other than they were living in a house that she wanted. That's it. So, I also have a little trouble with the fact that this argument about these two paragraphs having some sort of inference of validity should be considered at all in the appellate court because it wasn't raised in the trial court. It could have been argued in the trial court. Ms. Vega could have asked for leave to file a more complete affidavit, but she didn't. And I get a little frustrated, I guess, as an attorney because, and I apologize to the court, I think the last section of our brief says that this is waived on appeal. And I've been to a seminar and they told me that it's not waiver. It is forfeiture. And I apologize to the court if I confuse waiver and forfeiture, but I can only blame the court because you used the language improperly in a prior opinion. You're in good company. In any event, we believe the trial court properly sanctioned Ms. Vega and made very specific findings as to why she should have to pay the attorney's fees for having brought this case against the Andersons. And those findings of the trial court are very specific. And candidly, they apply equally well to the issue of who should pay fees on appeal. Because at the end of the day, you can't transform those two stricken paragraphs into any evidence of a cause of action that would survive a 2619 motion. I understand Mr. Green's problem. His client maybe didn't do a good job in the trial court. Candidly, if it had gone on further, I think things would have gotten even worse for her for a lot of reasons. But we raised the narrow issue to get the case dismissed, and I've been trying to stay on that narrow focus from the outset. Does the court have any questions? No. Thank you very much. Thank you, Mr. Robertson. Mr. Green, any rebuttal? Mr. Robertson said a couple of things that are not in the record in this case. I'm sure you won't consider anything that's outside of the record. I just wanted to remind you of a couple of things. First of all, he mentioned something about the validity of Ms. Vega's deed or the delivery of her deed being raised in a separate case, a separate deed in a separate case. There's nothing in this case about whether or not her deed was delivered. I'd ask that you not consider that. Number two, he mentioned that I think he at least suggested that the Andersons maybe didn't have a real estate broker in this case. And it's true, other than Ms. Vega's two paragraphs in her affidavit talking about ad nauseam in this case, there's no evidence that they had a real estate broker. If it were the case that they didn't have a broker, it would have been the easiest thing in the world for the Andersons to have submitted an affidavit saying they didn't have a broker,  There are affidavits from the Andersons. They say nothing about whether or not they had a broker or any other agents working for them. And I think that when you're attempting to defeat summary judgment, it's your obligation on the basis of your status as a good faith purchaser, it ought to be incumbent on you not only to prove your own personal lack of knowledge, but the non-existence of agents whose knowledge could be imputed to you. And they stopped short of that. That's all I have. Any questions? All right. Thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.